GREGORY, Circuit Judge,
dissenting:
The regulation defining pneumoconiosis does not require a physician to discuss the “latent and progressive” nature of pneumoconiosis. See 20 C.F.R. § 718.201. Since the Administrative Law Judge (“ALJ”) incorrectly discredited Westmoreland’s physicians for their failure to do so, and committed several factual errors[1], I am compelled to dissent.
The parties agree that Amick suffers from chronic obstructive pulmonary disease (“COPD”) that is totally disabling. Their dispute is limited to whether Amick’s COPD is caused by coal mine dust, smoking, or a combination of both. The employer’s doctors — Drs. Zaldivar, Stewart, Castle, Daniel, Spagnolo, and Morgan — uniformly opine that Amick’s habit of smoking approximately one pack of cigarettes per day for nearly forty years was the cause of his COPD. Each of West *645 moreland’s doctors provided significant testimony detailing the rationale for their decisions, yet the ALJ discounted all of the doctors’ conclusions, in part, because they did not address the latency or progressiveness of pneumoconiosis.[2] For example, the ALJ dismissed Dr. Spagnolo’s opinion because he “did not discuss the progressive and latent nature of coal mine dust exposure.” (J.A. 674.) The majority affirmed the ALJ’s reliance on this “omission” to devalue the testimony of Westmoreland’s doctors, but it does not cite to any direct precedent in support. The cases cited by the majority stand for the unassailable proposition that a doctor cannot base his opinion on the “flawed premise that a miner with no apparent pulmonary impairment upon leaving the coal mines could never thereafter develop a coal dust related impairment.” Four L Coal Co. v. Dir., OWCP, 157 Fed.Appx. 551, 555 (4th Cir.2005). However, in the instant case, only Dr. Castle, in my view committed this error. The testimony and findings of Westmoreland’s remaining physicians did not indicate that any of them disagreed with the fact that pneumoconiosis is a latent and progressive disease.
Indeed, as the majority correctly points out, § 718.201(c) “made clear the long-held understanding by the courts of appeals that pneumoconiosis is a ‘latent and progressive disease.’ ” (Maj. Op. 643.) Beyond the court of appeals, both the Secretary of Labor and the National Institute of Occupational Health and Safety concurred that § 781.201(c) codified the widely accepted scientific view regarding the latency and progressiveness of pneumoconiosis. The very structure of the Black Lung Benefits Act (“BLBA”) implicitly recognizes the latency and progressiveness of pneumoconiosis by allowing miners to refile their previously unsuccessful claims if their medical condition has changed.
The sole question that doctors must address in evaluating a coal miner’s eligibility for black lung benefits under the BLBA is whether the claimant, at the time of the exam, has clinical or legal pneumoconiosis. Neither the literal terms of the relevant regulations nor any case law provide that an employer’s doctors must discuss the latency or progressiveness of pneumoconiosis presumably because § 718.201(c) explicitly provides that this is the case.
While there may be substantial evidence to support awarding Amick benefits, I would remand this case to the ALJ for further consideration in light of this legal error and for the reasons set forth in Judge Smith’s opinion. As such, I respectfully dissent.

. Judge Smith’s opinion concurring and dissenting from the Benefits Review Board’s (“BRB”) decision sets out some of these factual errors. (See J.A. 694-697.)

. While many of the doctors did not explicitly address this issue, Dr. Zaldivar did so. Indeed, the Benefits Review Board (“BRB”) quoted the very portion of Dr. Zaldivar's trial testimony in which he specifically addressed the progressiveness of pneumoconiosis. (J.A. 686, n. 3.)